J-S28009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAMON ROBERT MURPHY | : | |
| | : | |
| Appellant | : | No. 1486 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 7, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0007064-2018

BEFORE: BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.: Filed: October 13, 2021

Damon Robert Murphy appeals from the aggregate judgment of sentence of twenty-eight to fifty-six years of imprisonment imposed after he entered an open guilty plea to criminal charges in connection with two robberies of the same victim undertaken to recover an illicit drug debt.[1] We affirm.

The trial court offered the following summary of the facts underlying Appellant's convictions.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purported to appeal from the order denying his post-sentence motion. However, the appeal properly lies from the judgment of sentence as made final by the denial of the post-sentence motion. *See*, *e.g.*, *Commonwealth v. Brown*, 249 A.3d 1206, 1209 (Pa.Super. 2021). We have amended the caption accordingly.

On April 30, 2018[,] at 7:45 p.m., [Appellant], Calvin Berkins (a co-defendant), and two unidentified females traveled to El Camino Motors, a used car dealership located in Norristown, PA. The women approached the owner of El Camino Motors and feigned interest in purchasing a used car. One of the women subsequently pulled out a semi-automatic handgun and forced the owner to open the drawers and get on the ground while asking "where is all the money?" The other female also pointed a handgun at the owner. While the owner was lying on the ground, [Appellant] approached and pointed a semi-automatic handgun at the owner. [Appellant] removed an iPhone and a wallet from the owner's pockets. [Appellant] instructed the owner not to move or he would kill him. [Appellant] and his associates obtained approximately $70,000 from the owner and left the premises. Mr. Berkins did not enter the business during the course of this robbery.

On July 18, 2018, [Appellant], Mr. Berkins and three additional co-defendants, Charlie Franco, Eric Santana and Theophilus Berry, traveled to El Camino Motors in a rented Ford Explorer and scouted the location. At 6:30 p.m., Mr. Franco and Mr. Santana approached the owner inside of the business and feigned interest in purchasing a used car. One of the men pulled out a semi-automatic handgun and pointed it at the owner. Mr. Berry subsequently entered the business and approached with a semiautomatic already drawn which he pointed directly at the owner's head and stated "we know you got money, you made a deal, we saw you." The third co-defendant also drew his gun. During this time, [Appellant] was seated in the driver's seat of the Ford Explorer in a parking lot across the street from El Camino Motors.

Mr. Berry grabbed the owner by the back of the neck and forced him into the office to find the money which Mr. Berry believed the owner had received. Mr. Franco also entered the office to assist while Mr. Santana stood outside as a lookout. Mr. Berry stole cash, car titles and the owner's phone and subsequently led the owner outside while holding the gun to his back. Mr. Franco and Mr. Santana followed close behind.

Once Mr. Berry, Mr. Santana, Mr. Franco and the owner reached the front door of the business, [Appellant] pulled the Ford Explorer out of the parking lot across the street and navigated through cross-traffic to park in front of El Camino Motors. Mr.

- 2 -

Berkins, who had been seated in the rear compartment of the vehicle during the commission of the robbery, opened the rear driver's side door from inside the car. Mr. Berry attempted to force the owner into the back of the vehicle but he resisted. Mr. Berry struck the owner on the back of the head with his firearm numerous times in an attempt to subdue him. [Appellant] then exited the driver's seat and attempted to force the owner into the vehicle. The owner was eventually able to break free and run away and [Appellant] and his co-defendants entered the vehicle and fled the scene. Further investigation revealed [Appellant] and his co-defendants had traveled to the Sugarhouse Casino in Philadelphia, PA later that evening to gamble with the proceeds from the robbery. The men were all wearing the same clothing as earlier in the day, except for [Appellant] who had changed his shirt after it had been torn during his attempt to force the owner into the Ford Explorer. Authorities later arrested Mr. Santana and Mr. Franco on July 24, 2018.

Following these events, [two of Appellant's co-defendants were arrested].

During their investigation of the arrested co-defendants, authorities were able to identify Mr. Berry and [Appellant] as the other two individuals involved in the El Camino Motors robberies and later arrested both men. During a search of the residence where [Appellant] was apprehended, authorities seized twenty-eight grams of cocaine which was in the process of being packaged for sale.

Trial Court Opinion, 1/29/21, at 1-3 (cleaned up).

Appellant was charged with a total of fifty-nine criminal counts in connection with his participation in these incidents. Following the litigation of pre-trial motions, Appellant opted to enter open guilty pleas to three counts of corrupt organizations; two counts each of criminal conspiracy (robbery), robbery (fear of serious bodily injury), and robbery; and one count each of criminal conspiracy (kidnapping), criminal conspiracy (aggravated assault), attempted kidnapping, aggravated assault, possession of a controlled

substance with intent to deliver ("PWID"), persons not to possess firearms, and firearms not to be carried without a license. In exchange, the Commonwealth agreed to dismiss the remaining charges. Appellant executed a written plea colloquy and participated in an oral plea colloquy which included the following exchanges:

DEFENSE COUNSEL: Hi, [Appellant].

Now, you heard the dissertation by the District Attorney and you understand why we're here today?

[APPELLANT]: Yes.

DEFENSE COUNSEL: And we've had a lot of time on the phone together and me visiting you up in the holding cell?

[APPELLANT]: Yes.

DEFENSE COUNSEL: Okay. And during that time, we were able to sit down and go over this guilty plea form?

[APPELLANT]: Yes.

DEFENSE COUNSEL: Okay. And I know you've been locked up so you wouldn't have any access to that, but you understand and write English?

[APPELLANT]: Yes.

DEFENSE COUNSEL: Are you on any kind of medication today or any kind of drugs that would affect your ability to know what's going on here today?

[APPELLANT]: No.

DEFENSE COUNSEL:    If I were to ask you each - if we were to go through this form and I were to ask you each question again, would you answer it the same way?

[APPELLANT]:    Yes.

DEFENSE COUNSEL:    Okay. And you realize by going through this today, you're giving up the right for the jury trial that we've been preparing for?

[APPELLANT]:    Yes.

DEFENSE COUNSEL:    And you're doing this of your own free will?

[APPELLANT]:    Yes

        . . . .

DISTRICT ATTORNEY:    Sir, do you understand that your attorney has been doing a good job of working on your behalf to work out an agreement with the Commonwealth in this case --?

[APPELLANT]:    Yes.

DISTRICT ATTORNEY:    --namely you're going to be -- we're going to be *nolle-pros[s]ing* roughly half of the bill of information in exchange for this plea agreement?

[APPELLANT]:    Yes.

DISTRICT ATTORNEY:    Do you understand that?

[APPELLANT]:    Yes.

DISTRICT ATTORNEY:    So in effect, you understand you're receiving a benefit by pleading guilty now?

[APPELLANT]:    Yes.

DISTRICT ATTORNEY: Despite you being here maybe a week before, we had discussions about the offer that had been on the table then and you decided to reject that plea. At this time, you are accepting it and nobody is forcing you, threatening you, or coercing you to do that today, right?

[APPELLANT]: No.

THE COURT: You said right. He said no. Take out the word right.

[APPELLANT]: No, no one is forcing me to do anything.

DISTRICT ATTORNEY: All right. And all the answers in the colloquy that you filled out would be the same if you were to answer all these questions now under oath, right?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: You're doing this of your own free will?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: Are you pleading guilty because you are, in fact, guilty in this case; isn't that right?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: You also understand that if we were going to trial, the Commonwealth has been in the process of securing and has secured by way of court order a necessary witness to be flown in for trial.

Do you understand that?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: And by pleading guilty today, the trial will not happen.

Do you understand that?

[APPELLANT]:          Yes.

DISTRICT ATTORNEY:    And that the Commonwealth would be substantially prejudiced in the future in trying to get that witness back for a future date.

Do you understand that?

[APPELLANT]:          Yes.

DISTRICT ATTORNEY:    You agree that we would be prejudiced if you were to try to withdraw your plea?

[APPELLANT]:          Yes.

DISTRICT ATTORNEY:    And you want to go through with this plea today, don't you?

[APPELLANT]:          Yes.

DISTRICT ATTORNEY:    All right. Sir, you're admitting that on April 30th, 2018, you robbed a person named Victor, also known as Hugo Barroso, at the El Camino Motors in Norristown, Montgomery County?

[APPELLANT]:          Yes.

DISTRICT ATTORNEY:    You robbed him at gunpoint with two other men, right?

[APPELLANT]:          Yes.

DISTRICT ATTORNEY:    And you put him in fear of death or serious bodily injury because you were using a gun at the time and you pointed it at him, right?

[APPELLANT]:          Yes.

DISTRICT ATTORNEY: All right. And you received a fair amount of money from that robbery?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: All right. How much did you receive?

[APPELLANT]: I don't remember.

DISTRICT ATTORNEY: Thousands, though, right?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: All right. And at a later date, July 18th, you went back there again with a bunch of guys, Theo Berry, Eric Santana, Charlie Franco and Calvin Berkins, all who are either going to be pleading guilty or have pled guilty in this case, but you went back there to rob this victim a second time on July 18th, is that right?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: And at that time, you stayed in the car, the Ford Explorer, the rented Ford Explorer, while Theo Berry, Eric Santana and Charlie Franco went in with guns to rob the victim again, right?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: And then they tried to bring the victim out to the car in an attempt to take him from that place and put him in the car against his will at gunpoint, right?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: And you got out of the car and attempted to try to help them get the victim into the car essentially to take him or kidnap him; that's what the kidnapping charge is, right?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: All right. The victim eventually was able to escape?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: All right. During the course of that scuffle, a gun was used to strike him, the victim, in the head multiple times while you were fighting with him, right?

[APPELLANT]: I don't know.

DISTRICT ATTORNEY: Okay. You admit, though, that you, yourself, punched him many times in the head?

[APPELLANT]: I didn't punch anybody. I didn't punch him, no, I didn't.

DISTRICT ATTORNEY: Okay. But you tried to get him into the car?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: All right. And would you have any reason to disagree with me if during that scuffle he was punched or hit multiple times trying to get him into the car - to force him into the car?

[APPELLANT]: I mean, I don't know. I didn't do it. I don't know if anybody else did, but I didn't, so I don't know. I mean, I can't agree with you if I don't know the situation.

DISTRICT ATTORNEY: I'm not trying to get you to admit to anything that you don't know, but would you have any reason to disagree with me that that could have happened by another

individual during that scuffle and that you're held liable by accomplice liability?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: Okay. You admit that you would be liable for another person's action in trying to kidnap him because you were also trying to kidnap him.

[APPELLANT]: Yes.

DISTRICT ATTORNEY: Okay. You admit that you are a person not to possess because of prior possession with intent to deliver felony convictions, right? You can't have a gun?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: And you had a gun during the first robbery in April?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: Okay. When the police arrested you on September 6, 2018 in Philadelphia, they searched your house and found a quantity of cocaine -- crack cocaine in your house?

[APPELLANT]: They searched a house, not my house. They searched a house.

DISTRICT ATTORNEY: As part of the plea sir, you're admitting that you were in possession of a quantity of cocaine with the intent to deliver it?

[APPELLANT]: Yes.

DISTRICT ATTORNEY: Okay. And specifically that cocaine was about an ounce or 28 grams?

[APPELLANT]: I don't know exactly how much it was.

DISTRICT ATTORNEY: In terms of --

[APPELLANT]:         I mean, yes. Yes. Yes.

DISTRICT ATTORNEY:  How much did you believe you had?

[APPELLANT]:         I mean, I don't know, but I'll take your word for whatever you say it was.

DISTRICT ATTORNEY:  It was a substantial quantity, enough that you obviously intended to sell it, right?

[APPELLANT]:         Yes.

DISTRICT ATTORNEY:  As part of this plea, you're admitting that the group of you that you were all with, the names that I previously named, you were part of basically a loose group or an organization, not necessarily a gang at all, that's not what I'm intending to say, but you were in an organization where you committed these multiple criminal acts for the purpose of benefitting financially, getting money?

I'll reword it. You look confused.

So you basically committed these multiple robberies, right?

[APPELLANT]:         Um-hmm.

DISTRICT ATTORNEY:  Towards the singular victim in order to benefit financially?

[APPELLANT]:         Yes.

DISTRICT ATTORNEY:  And that you recruited others to help you do that?

[APPELLANT]:         That I recruited others or --?

DISTRICT ATTORNEY:  That -- not necessarily you --

[APPELLANT]:         Yes. Yes.

DISTRICT ATTORNEY:   -- but others were recruited and you were a part of that --

[APPELLANT]:   Yes.

DISTRICT ATTORNEY:   -- in order to facilitate the robberies --

[APPELLANT]:   Yes.

DISTRICT ATTORNEY:   -- therefore becoming a corrupt organization is what that means.

[APPELLANT]:   Yes.

DISTRICT ATTORNEY:   You admit to that?

[APPELLANT]:   Yes.

. . . .

THE COURT:   Okay. Just a few follow-ups, sir.

You understand today you are entering into an agreement, like a contract between you and the Commonwealth, and you understand it's an enforceable contract between the two of you?

[APPELLANT]:   Yes.

THE COURT:   Okay. And you understand that the contract is that the Commonwealth is agreeing to *nolle-pros* or dismiss a number of charges, in this case almost half the charges, in exchange for your pleading open on the other counts.

Do you understand that?

[APPELLANT]:   Yes.

THE COURT:          Now, it's your decision and your decision alone to enter into this agreement today to plead open, correct?

[APPELLANT]:        Yes.

THE COURT:          Has anyone forced, threatened, or coerced you into doing that today?

[APPELLANT]:        No.

THE COURT:          Is this your decision and your decision alone?

[APPELLANT]:        Yes.

THE COURT:          You understand you have an absolute right to go to trial on Monday. You have an absolute right to proceed with a jury trial.

You understand that?

[APPELLANT]:        Yes.

THE COURT:          And you also have an absolute right to plead guilty in this case, plead open to certain charges and enter into that agreement with the Commonwealth.

Do you understand that?

[APPELLANT]:        Yes.

THE COURT:          So this is how you want to proceed today with the open plea agreement?

[APPELLANT]:        Yes.

Trial Court Opinion, 1/29/21, at 6-14 (cleaned up) (quoting N.T. Guilty Plea, 9-17/19, at 5-6, 8-10, 12-17, 19-21). The trial court accepted the plea and scheduled sentencing to take place following a presentence investigation.

At the sentencing hearing on February 7, 2020, counsel informed the court that Appellant desired "to vacate his guilty plea based on certain factors and go to trial[.]" N.T. Sentencing, 2/7/20, at 5. After reading aloud pertinent portions of the plea colloquy reproduced *supra*, the trial court inquired about the basis for Appellant's request to withdraw his plea. Appellant stated: "I wasn't actually aware of a lot of things in the case, and I feel like I was kind of rushed into making a decision." ***Id***. at 20. The court inquired whether Appellant was contending that his "plea was not intelligent, knowing, or voluntary," and Appellant responded in the affirmative. ***Id***. Then, Appellant informed the court that he had "lied throughout [the colloquy] proceeding," explaining:

> I mean, I agreed to do something, so I just said yes to the things because I agreed to do something, but that's not really – that really wasn't my decision that I wanted to make, but like I said, I was rushed into doing it.
>
> I talked to my attorney for maybe five minutes downstairs, if that long, when he came downstairs and asked me about the open plea. It ain't like I had weeks to decide whether I wanted to do that or not.
>
> I got woke up out of my sleep and brought down to court. I didn't know why I was there until he came down there to talk to me. Once he came down and talked to me, it was like, "It's something that you should do." I feel like he wasn't working in my best interest, honestly.

***Id***. at 21.

Appellant also asserted his innocence, offering the following as the basis for that claim:

[APPELLANT]: I mean, well, you was there the day I took the open plea, and as you can see, when he was asking me questions, I didn't answer them, like, right away like, oh, yes, yes. I was hesitant about answering a lot of questions because, like, I wasn't --

THE COURT: Well -- okay. I'm sorry.

[APPELLANT]: -- because I wasn't there for what he was saying I was there for.

THE COURT: All right. It was the first robbery that took place that you were accused of robbing El Camino Motors with two women.

Are you saying that you were not there?

[APPELLANT]: I was not there.

THE COURT: Okay. The second robbery which shows video of you getting out of a car, the getaway car, are you saying that's not you in the video?

[APPELLANT]: I'm not saying that, but, I mean, as far as the first robbery, like, I wasn't there for the first robbery.

THE COURT: And when you were arrested by Philadelphia police, you were found to be in possession of crack cocaine.

[APPELLANT]: I wasn't in possession of anything. I was in the house, and the crack cocaine was in the house. I wasn't in possession of it. There was other people in the house, too.

They said they was out there -- they were sitting outside watching the house, so they seen somebody come in and out of the house. I wasn't the only person there, so who's to say it was mine?

When they asked me was it mine, I told them no. When they said they asked the other person was it theirs, they told them it wasn't theirs, and they told me, "Well, you're going to jail anyway, so you might as well take it," and I said, "Whatever." That's my words, "Whatever."

THE COURT:      Do you have any evidence of an alibi regarding the first robbery?

[APPELLANT]:      I mean, I don't know exactly where I was that day, but I know I didn't commit no robbery.  I know that for sure.

THE COURT:      But on September 17th, 2019, you stated under oath that you committed that robbery.

[APPELLANT]:      I mean, I agreed to what the DA said because I agreed to take an open plea, but at the time, I said my lawyer never told me what the charges was when I was downstairs.

He told me number one, two, three, four, five, seven, whatever numbers he told me, and I asked him what was those charges.  He said he didn't have the paper in front of him to tell me.  Once I got in the courtroom, he still didn't tell me.  I heard the charges when I got on the stand and the DA said the charges. That's when I actually heard the exact charges.

THE COURT:      But you did hear the charges that day?

[APPELLANT]:      I mean, I didn't remember all the charges.  I was just agreeing to them because I agreed to take the open plea.

*Id*. at 22-24.

After entertaining argument from the parties, the trial court denied Appellant's motion, offering an extensive recital of its reasons for its conclusions that Appellant failed to offer a fair and just reason to withdraw his plea and that the Commonwealth would be prejudiced by the withdrawal.  *See id*. at 29-34.  The trial court then proceeded to sentence Appellant to the term indicated above.

Appellant filed a timely post-sentence motion requesting reconsideration of his sentence.  Therein, Appellant maintained that he had been given an aggregate term of incarceration "ten times the recommended sentence under

- 16 -

the guidelines." Motion to Reconsider Sentence, 2/18/20, at ¶ 7. He alleged that the trial court sentenced him to "more time than he deserved" given the mitigating evidence and the fact that the victim had unclean hands in that he was "apparently engaged in the drug trade." *Id*. The trial court denied Appellant's motion.

Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following questions for this Court's review: (1) "Should the trial court have permitted Mr. Murphy to withdraw his plea because of his colorable assertion of innocence?" and (2) "Was the trial court's sentence manifestly excessive?" Appellant's brief at 3.

We begin with the pertinent legal principles. This Court reviews a trial court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *Commonwealth v. Elia*, 83 A.3d 254, 261 (Pa.Super. 2013). "When a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused." *Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019) (cleaned up). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id*. (cleaned up). Indeed, "it is important that appellate courts honor trial courts'

discretion in these matters, as trial courts are in the unique position to assess the credibility of claims of innocence and measure, under the circumstances, whether defendants have made sincere and colorable claims that permitting withdrawal of their pleas would promote fairness and justice." *Id*. at 121.

Pursuant to the Pennsylvania rules of criminal procedure, "[a]t any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of plea of not guilty." Pa.R.Crim.P. 591(A). Such discretion should be exercised liberally in a defendant's favor, so long as a "fair-and-just reason" is offered **and** withdrawal would not substantially prejudice the Commonwealth. ***Commonwealth v. Forbes***, 299 A.2d 268, 271 (Pa. 1973). ***See also Commonwealth v. Islas***, 156 A.3d 1185, 1192 (Pa.Super. 2017) (noting that establishment of a fair and just reason nonetheless does not entitle a defendant to withdraw his plea if the withdrawal would substantially prejudice the Commonwealth).

A plausible assertion of innocence, for example, may provide a colorable demonstration that allowing the withdrawal of the plea would serve fairness and justice. ***See Commonwealth v. Carrasquillo***, 115 A.3d 1284, 1292 (Pa. 2015). However, "a bare assertion of innocence is not, in and of itself, a sufficient reason to require a court to grant such a request." *Id*. at 1285. Where an assertion of innocence "is founded upon a desire to manipulate the

system," a withdrawal request may properly be denied. ***Commonwealth v. Blango***, 150 A.3d 45, 48 (Pa.Super. 2016) (cleaned up).

The trial court offered the following explanation for its conclusion that Appellant failed to demonstrate justification for withdrawing his plea:

> With respect to [Appellant]'s assertion of innocence as a fair and just reason for withdrawing his guilty plea, this claim is not plausible and instead constitutes a bare assertion. At his guilty plea withdrawal hearing, [Appellant] simply asserted that he was not present for one of the robberies and the drugs which authorities recovered incident to his arrest did not belong to him. [Appellant] offered no other evidence regarding his innocence claim. Additionally, the Commonwealth presented a detailed description of the factual basis for the charges during [Appellant]'s oral plea colloquy, in which [Appellant] confirmed each fact and further confirmed that he had committed the acts in question. Although this admission cannot be used to negate [Appellant]'s innocence assertion, [it] undercut[s] [Appellant]'s statement at the plea withdrawal hearing that he was confused about the factual basis and attempted to qualify his responses.
>
> In terms of the timing of the motion, it is notable that [Appellant] first presented his motion to withdraw and the accompanying innocence claim immediately prior to his sentencing hearing, despite the availability of ample time in which to present this motion to the court in advance of sentencing. Further, the Commonwealth possessed substantial evidence regarding [Appellant]'s role in the robberies and attempted kidnappings, including victim and co-defendant testimony, cellular telephone data and surveillance footage. [Appellant]'s decision to attempt to withdraw his guilty plea following the court's recent issuance of sentences for two of his co-defendants also serves to demonstrate [Appellant]'s actions had an ulterior or illicit motive. The totality of the circumstances demonstrates [Appellant] was simply attempting, in bad faith, to delay his inevitable imprisonment by utilizing this motion and such action fit a pattern evident throughout the course of [Appellant]'s prosecution in which he attempted to delay court proceedings on multiple occasions. Thus, [Appellant] failed to present a fair and just reason to permit the withdrawal of his guilty plea.

Moreover, even if [Appellant] presented a fair and just reason to support the withdrawal of his guilty plea, he would still not be entitled to relief due to the Commonwealth's demonstration that it would be substantially prejudiced by the grant of a withdrawal. During the plea colloquy and at the guilty plea withdrawal hearing, the Commonwealth asserted substantial prejudice would result if [Appellant] was permitted to withdraw his guilty plea. This included the inability to secure certain witnesses for a future trial. During two oral colloquies, [Appellant] acknowledged that the Commonwealth would be substantially prejudiced in the event he was permitted to withdraw his guilty plea at a later date. [Appellant] further acknowledged he understood that in light of this confirmation, he would be unable to withdraw his guilty plea absent a fair and just reason. [Appellant] also confirmed that he understood that he had agreed to this fact as part of an arrangement in which he entered an open guilty plea in exchange for the Commonwealth's decision to *nole prosse* [sic] a significant amount of the charges. Therefore, [Appellant] was bound by his agreement that any future withdrawal of his guilty plea would substantially prejudice the Commonwealth.

Trial Court Opinion, 1/29/21, at 19-20 (cleaned up). **See also** N.T. Sentencing, 2/7/20, at 29-30 (providing similar analysis contemporaneous with the denial of the motion).

Appellant claims that his assertion of innocence was plausible and warranted the withdrawal of his plea "at least as to the first robbery, the gun charges, and the cocaine charges." Appellant's brief at 9. He contends that his assertion that he was not present at the first robbery "would negate guilt on all charges stemming from" that robbery. **Id**. Appellant further argues that he raised a substantial defense to the drug charges because his mere presence in the house where the drugs were found did not suffice to prove constructive possession, and he explained that the police encouraged him to

- 20 -

accept responsibility since he was being arrested anyway. *Id*. at 10. Finally, Appellant states that the Commonwealth's assertion of prejudice is implausible, as it "would merely have to do whatever needs be done to secure the appearance of a witness in federal custody" in order to have proceeded to trial. *Id*. at 12.

We conclude that Appellant has failed to sustain his "heavy burden" of showing that the trial court abused its discretion in denying his motion. ***Norton***, ***supra*** at 120. First, in asserting his innocence, Appellant did not claim that he was not part of a corrupt organization, that he did not participate in the various conspiracies to which he pled guilty in relation to the first robbery, that he did not possess a firearm, or that he did not act as an accomplice to the other members of the corrupt organization in committing the first robbery. With his admissions in that regard intact, Appellant could be found guilty as a co-conspirator or an accomplice even if he were not at the scene when the robbery occurred, thus rendering his assertion of innocence implausible. ***See***, ***e.g.***, ***Commonwealth v. Murphy***, 844 A.2d 1228, 1234-38 (Pa. 2004) ("[A] defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor. . . . [A] defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.").

Likewise, Appellant's testimony did not suggest that he lacked dominion and control over the drugs found in the house where he was arrested, that they belonged to someone else, or that he could not be responsible for their possession through accomplice or conspiracy liability. Rather, he merely said "I wasn't in possession of anything. . . . I wasn't the only person there, so who's to say it was mine?" N.T. Sentencing, 2/7/20, at 23. Hence, Appellant did not raise a colorable claim of innocence to the PWID charge; he merely challenged the Commonwealth to prove it.

Finally, Appellant has not convinced us that the trial court's determination that the Commonwealth would have suffered substantial prejudice was erroneous. Appellant's contention that the Commonwealth would only have had "to do whatever needs be done" to make new arrangements to secure their federal-inmate witness to testify at a later date does nothing to explain a lack of prejudice.[2] The absence of even an awareness of the process for doing so utterly undermines Appellant's ability to establish his claim. Moreover, the terms of a plea agreement may pertain to limit a defendant's ability to later withdraw it. *See Commonwealth v. Porreca*, 595 A.2d 23, 2-276 (Pa. 1991) (holding that a defendant was not

---

[2] The Commonwealth argues that it would have been prejudiced because the speedy trial deadline of Pa.R.Crim.P. 600 was looming. *See* Commonwealth's brief at 10-12. However, the withdrawal of a plea is considered the grant of a new trial, which resets the 365-day window for bringing a defendant to trial pursuant to Rule 600(a)(2)(d). *See* Pa.R.Crim.P. 600, Comment.

permitted to withdraw his plea because "the plea agreement expressly prohibited withdrawal in the event that the court did not concur in the recommendation of sentence"). Indeed, this Court has held that a defendant's motion to withdraw a plea was properly denied where the defendant had agreed as part of the plea that the Commonwealth would be substantially prejudiced if he sought to withdraw it. *See Commonwealth v. Williams*, 198 A.3d 1181, 1185 (Pa.Super. 2018).

Accordingly, we find that the trial court acted within its discretion in determining that Appellant did not proffer a fair and just reason to withdraw his plea and that the Commonwealth would have been substantially prejudiced if Appellant were permitted to withdraw it. As Appellant satisfied neither of the two required prongs to entitle him to relief, we have no cause to disturb the trial court's ruling.

In his remaining issue, Appellant challenges the discretionary aspects of his sentence. The following principles govern our consideration of his claim:

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

- 23 -

*Commonwealth v. Lucky*, 229 A.3d 657, 663-64 (Pa.Super. 2020) (internal quotation marks omitted). "It is well-established that where the issues raised assail the trial court's exercise of discretion in fashioning the defendant's sentence, the trial court must be given the opportunity to reconsider the imposition of the sentence either through the defendant raising the issue at sentencing or in a post-sentence motion." *Commonwealth v. Cramer*, 195 A.3d 594, 610 (Pa.Super. 2018) (cleaned up).

Appellant filed a timely notice of appeal and a post-sentence motion seeking reconsideration of his sentence. Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Therein, Appellant contends that his aggregate sentence is manifestly excessive. *See* Appellant's brief at 8.

The trial court opined that Appellant's claim raises a substantial question. *See* Trial Court Opinion, 1/29/21, at 23. We shall accept that assessment and proceed to the merits of Appellant's claim. *See* *Commonwealth v. Dodge*, 77 A.3d 1263, 1272 (Pa.Super. 2013) (holding claim that trial court failed to consider mitigating factors in conjunction with claim that the aggregate sentence of consecutive, standard-range sentences was excessive, presented a substantial question).

In considering challenges to a sentence, "this Court must accord the sentencing court great weight as it is in the best position to view the

defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." ***Commonwealth v. Edwards***, 194 A.3d 625, 637 (Pa.Super. 2018) (cleaned up). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa.Super. 2009). Accordingly, we review the sentence for an abuse of the trial court's discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa.Super. 2014).

Sentencing discretion is broad, but "the trial court's discretion is not unfettered." ***Commonwealth v. Coulverson***, 34 A.3d 135, 144 (Pa.Super. 2011). "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." ***Antidormi***, ***supra*** at 761 (citations and quotation marks omitted). "And, of course, the court must consider the sentencing guidelines." ***Coulverson***, ***supra*** at 144 (cleaned up). The sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

The trial court explained the reasons for the sentence imposed as follows:

> [Appellant]'s aggregate sentence of twenty-eight to fifty-six years of imprisonment consists of a low-end standard range sentence of thirty-nine to seventy-eight months of imprisonment with respect one of the corrupt organizations charges, a low-end standard range sentence of sixty to one hundred and twenty months of imprisonment with respect to the persons not to possess, use, manufacture, control, sell or transfer firearms charge, a low-end standard range sentence of sixty-six to one-hundred and thirty-two months of imprisonment with respect one of the criminal conspiracy - engaging in robbery charges, a low-end standard range sentence of twenty-seven to fifty-four months of imprisonment with respect to the possession of a controlled substance with intent to deliver charge, a low-end standard range sentence of seventy-eight one hundred and fifty-six months of imprisonment with respect to one of the robbery - fear of serious bodily injury charges, and a low-end standard range sentence of sixty-six to one hundred and thirty-two months of imprisonment with respect to the attempted kidnapping charge. All of [Appellant]'s other counts either merged for sentencing purposes or the court ran them concurrent. Thus, to the extent [Appellant] contends the individual component sentences of his aggregate sentence are excessive and unreasonable, this claim has no merit.
>
> The court also had the benefit of a PSI report and considered all of the mitigating factors related to [Appellant], including his status as a father to multiple children. Additionally, the court considered all other factors required under 42 Pa.C.S.A. § 9721(b), such as the sentencing guidelines. The court also had the benefit of sentencing memorandum prepared by the Commonwealth and defense counsel. Many of [Appellant]'s family members also appeared at sentencing and counsel indicated that [Appellant] turned to selling drugs as a result of his tumultuous upbringing and to support his family. Therefore, the record indicates the court was aware of relevant information regarding [Appellant]'s character, including mitigating factors, and weighed this information when it imposed sentence.
>
> [Appellant] is a violent offender who participated in two brazen armed robberies and attempted to kidnap a business owner. [Appellant] is also an admitted drug dealer who was in

- 26 -

possession of a firearm which he was not permitted to possess due to a prior conviction. In his victim impact statement, the El Camino Motors owner indicated he felt "utter terror" during these incidents and later felt like a "hunted animal" when authorities, in the interest of safety, instructed him and his family to avoid their home for at least one week following the attempted kidnapping. The court referenced these actions and other factors in its reasoning for the sentence it imposed . . . .

. . . .

The record demonstrates the court considered the magnitude of [Appellant]'s actions and determined he was not entitled to a "volume discount" for his crimes. The court took mitigating factors into account and determined that these factors did not justify a decreased sentence in light of [Appellant]'s active involvement in two armed robberies and his lack of remorse. Thus, due to the serious nature of [Appellant]'s crimes and the danger he posed to the public, [Appellant] cannot claim that his sentence was so manifestly excessive as to constitute an unduly harsh punishment.

Therefore, the court appropriately considered all of the factors set forth in 42 Pa.C.S.A. § 9721(b) and did not abuse its discretion when it imposed an aggregate sentence of twenty-eight to fifty-six years of imprisonment. . . .

Trial Court Opinion, 1/29/21, at 23-26.

Appellant's argument that this sentence is the product of an abuse of

discretion is, in its entirety, as follows:

Appellate courts may set aside a sentence that is so manifestly excessive as to constitute too severe a punishment. Here, [Appellant] pleaded guilty to participating in two armed robberies at gunpoint, one involving an attempted kidnapping; possession of about an ounce of cocaine; possessing a gun despite a prior felony conviction; and participating in a corrupt organization. For that, he received up to 56 years in prison. He should not face the prospect of potentially spending the rest of his life [in prison] absent parole. His sentence is far longer than what the law mandates even for third-degree murder.

- 27 -

Appellant's brief at 13 (cleaned up).

This effort falls woefully short of meeting his burden to convince us, "by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Antidormi**, **supra** at 760. Rather, the certified record reflects that the trial court thoughtfully considered the relevant considerations and imposed individualized sentences, each within the standard range suggested by the guidelines, and imposed the sentence it deemed appropriate to protect of the public, in light of the gravity of the offense, as well as Appellant's rehabilitative needs. Appellant's argument seriously downplays the violence of the multiple criminal acts in which he participated, and is based upon the oft-rejected notion that defendants are entitled to a volume discount when sentenced simultaneously on multiple convictions. **See**, **e.g.**, **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa.Super. 2013) (affirming aggregate judgment of sentence of thirty-five to seventy years of imprisonment for scores of convictions for possession of child pornography). Appellant has provided no basis for this Court to disturb that sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/13/21